UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

APRIA HEALTHCARE LLC,

               Plaintiff,

    -against-

STEPHEN L. FOREMAN,

               Defendant.

------------------------------------------------------------x

Civ. Action No.:

(ECF)

15 CV 1633

JUDGE BATTS

RECEIVED MAR 0 5 2015 U.S.D.C. S.D.N.Y.

## VERIFIED COMPLAINT

        Plaintiff, Apria Healthcare LLC ("Apria"), through its attorneys, Jackson Lewis P.C., for its complaint against Stephen L. Foreman ("Foreman") alleges:

### Nature of Action

        1.    Apria brings this action asserting claims for breach of contract and misappropriation of trade secrets. Apria seeks compensatory and punitive damages, injunctive relief, liquidated damages and attorneys' fees.

### Parties, Jurisdiction and Venue

        2.    Apria is a Delaware limited liability company which maintains a principal place of business at 26220 Enterprise Court, Lake Forest, CA 92623. The sole member (owner) of Apria is a Delaware corporation with a principal place of business in California.

        3.    Foreman is a former employee of Apria whose last known address is 613 Prince Valiant Court, Franklin Tennessee 37067.

        4.    Jurisdiction of the Court and proper venue are based upon, <u>inter alia</u>, the Management Unit Subscription Agreements (the "MUSAs," described in more detail later in this Complaint) enforceable between Foreman and Apria.

1

5. Specifically, the MUSAs contain a "Governing Law; Jurisdiction" provision that provides:

> Governing Law; Jurisdiction. This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of Delaware. . . . Any suit, action or proceeding with respect to this Agreement . . . shall be brought in any court of competent jurisdiction in the State of New York or the State of Delaware, and each of the Company and [Foreman] hereby submits to the exclusive jurisdiction of such courts for the purpose of any such suit. . . .

6. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1332(a)(1) by virtue of the diversity of citizenship of the parties and the fact that the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.

7. Venue lies in this district under the terms of the MUSAs and pursuant to 28 U.S.C. § 1391, because Apria maintains a place of business in this district.

## FACTUAL BACKGROUND
### Facts about Apria

8. Apria is an "Affiliate" of the "Sponsor" under the MUSAs, as those terms are defined in the MUSAs. The MUSAs expressly grant Affiliates (including Apria), of the Sponsor, the right to enforce the MUSAs.

9. Apria is a leading provider of integrated home healthcare products and services. It offers an extensive range of home respiratory therapy, diabetic supplies, medications and equipment, home medical equipment and related services. Apria has over 400 locations across the United States.

10. Apria is able to maintain its leadership position in the integrated home healthcare product and services industry by establishing and maintaining contacts with managed care organizations, as well as with other customers and referral sources and by obtaining maintaining

contracts with governmental agencies, including but not limited to contracts obtained through Medicare's Competitive Bidding program.

11. Apria has invested, and will continue to invest, considerable resources to develop information, service and delivery and patient care models and methods, as well as strategic initiatives necessary to maintain its leadership position in its industry. In the past few years, that industry has undergone a radical transformation, with the prices paid for services in the industry sharply declining. While a number of competitors have struggled or failed under that price pressure, Apria has maintained its business in part because of the information and techniques and the strategic initiatives it employs to prioritize current and potential accounts, receive and fill orders, deliver products and services, and maintain a positive perception in the market.

12. Apria has invested, and will continue to invest, considerable resources to develop and maintain the information and methods and to implement the initiatives described above, which are confidential information and trade secrets of Apria, and are maintained by Apria in confidence.

13. Such information and methods were, and are, principal assets of Apria's business, and they give Apria a considerable advantage over competitors who have not invested comparable resources, and/or have not been as successful, in developing their business information and methods.

14. To protect such information and methods, Apria requires that individuals who receive rights under the MUSAs comply with the terms of the MUSAs, which includes confidentiality and non-competition provisions.

### Facts about Foreman's Employment with Apria

15. Foreman held a number of senior positions of substantial responsibility at Apria during his approximately 15 years with the company. He was a Branch Manager, a Regional Vice President, a Division Vice President, Senior Vice President of Customer Service and a Senior Vice President of Ancillary Services.

16. In his various positions at Apria, Foreman was responsible for managing key portions of Apria's business and in such roles he was provided and had access to operations, sales and other sensitive and highly confidential information of Apria.

17. In addition, in his positions as a national officer for Apria, with responsibilities covering all of the United States, Foreman was among the senior executives most involved in Apria's development of information, methods and strategic initiatives implemented on a national basis to stay competitive, as described above.

18. As part of Foreman's employment with Apria, Foreman and one of Apria's parent companies entered into a Management Unit Subscription Agreement dated on or about March 9, 2009 ("MUSA I") and a second Management Unit subscription Agreement dated on or about May 31, 2012 ("MUSA II"), pursuant to which Foreman collectively received approximately 435,345 Class B Units in Apria Holdings LLC ("Holdings") (the "B Units"), and 145,111 C Units in Holdings (the "C Units"). Foreman evidenced his agreement to the MUSAs by signing Executive Master Signature Pages with respect to both MUSA I and MUSA II.

19. The MUSAs imposed obligations on Foreman regarding his use of Apria "Confidential Information." Specifically, the MUSAs provide that, by virtue of his agreement to be bound by the MUSAs and receiving the benefits provided therein, Foreman is obligated, among other things, to a "Competition; Non-Compete; Non-Solicit; Non-Disparagement"

provision. In accordance with subpart 1(a) of this provision, Foreman is prohibited from using or disclosing Apria's "Confidential Information." This provision provides in part:

> (i) Executive will not at any time (whether during or after Executive's employment with the Company) (x) retain or use for the benefit, purposes or account of Executive or any other person; or (y) disclose, divulge, reveal, communicate, share, transfer or provide access to any person outside the Company (other than its professional advisers who are bound by confidentiality obligations), any non-public, proprietary or confidential information --including without limitation trade secrets, know-how, research and development, software, databases, inventions, processes, formulae, technology, designs and other intellectual property, information concerning finances, investments, profits, pricing, costs, products, services, vendors, customers, clients, partners, investors, personnel, compensation, recruiting, training, advertising, sales, marketing, promotions, government and regulatory activities and approvals -- concerning the past, current or future business, activities and operations of the Company, its subsidiaries or affiliates and/or any third party that has disclosed or provided any of same to the Company on a confidential basis ("Confidential Information") without the prior written authorization of the Board.

20. Foreman also agreed that, upon the cessation of his employment, he would stop using the Confidential Information, as defined in the MUSAs, and would delete, destroy or return such information to Apria.

21. Foreman is also prohibited, for a period of one year following his termination of employment with Apria, from accepting employment with any entity engaged in the business of home respiratory therapy, home infusion therapy, and home medical equipment within the United States. Specifically, the MUSAs state:

> Executive acknowledges and recognizes the highly competitive nature of the businesses of the Company and its affiliates and accordingly agrees as follows:
>
> (i) Executive will not, within one year following the termination of his employment with the Company (the "Post-Termination Period") or during Executive's employment (collectively with the Post-Termination Period, the "Restricted Period"), accept an

employment or consulting relationship (or own or have any financial interest in), directly or indirectly, with any entity engaged in the business of home respiratory therapy, home infusion therapy, and home medical equipment, within the United States.

22. By agreeing to be bound by the terms of the MUSAs and accepting the benefits provided therein, Foreman agreed that Apria would suffer irreparable damages as a result of his breach or threatened breach of the post-employment restrictions.

23. Additionally, the MUSAs give Apria the right to repurchase Foreman's Units in the event of a violation of the Restrictive Covenant. Specifically:

> If . . . a Restrictive Covenant Violation occurs . . . then the Company shall have the right . . . to purchase (the "Call Option"), and each member of Executive's Group shall be required to sell to the Company, all such Vested Units then held by [Foreman].

24. The MUSAs expressly provide Apria will be entitled to an injunction in the event Foreman violates the post-employment restrictions:

> Injunctive Relief. Executive and Executive's Permitted Transferees each acknowledges and agrees that a violation of any of the terms of this Agreement will cause the Company irreparable injury for which adequate remedy at law is not available. Accordingly, it is agreed that the Company shall be entitled to an injunction, restraining order or other equitable relief to prevent breaches of the provisions of this Agreement and to enforce specifically the terms and provisions hereof in any court of competent jurisdiction in the United States or any state thereof, in addition to any other remedy to which it may be entitled at law or equity.

25. As a senior employee of Apria with national responsibilities, Foreman had access to confidential information and trade secrets including, but not limited to, information relating to Apria's employees, customers and referral sources, techniques for acquiring and maintaining customers and referral sources, and recruiting, developing, training and retaining employees. Foreman also, as mentioned above, was directly and materially involved in, and has

comprehensive knowledge of, the information, methods and strategic initiatives that Apria developed and employs in order to maintain its leadership position in the industry, in spite of competitive pressures, including information and techniques Apria uses to prioritize current and potential accounts, receive and fill orders, deliver products and services, and maintain a positive perception in the market.

26. In the winter and early spring of 2014, Foreman received two payments with respect to his vested B Units in connection with a transaction that involved the divestiture of an Apria subsidiary. In January he received a $23,543 distribution, representing the share of the cash realized from the divestiture which was allocable to the B Units. In April he received an additional advance of $146,231 representing an advance on the amount of tax payable on the "cash and non-cash" gain allocable to Foreman's B Units resulting from the divestiture. The second distribution was provided as an advance on future distributions to protect grantees from the burden of having to pay tax resulting from "phantom gains" which would not convert into cash until further transactions occur.

27. Foreman voluntarily resigned his employment with Apria, effective May 9, 2014.

### Facts about American HomePatient, Inc.

28. Following Foreman's resignation, Apria learned that Foreman became employed by American HomePatient, Inc. ("AHOM").

29. AHOM is a diversified home healthcare provider, in precisely the same business as Apria, and is one of Apria's closest national competitors, if not the closest. AHOM has over 250 locations across the United States.

30. Apria contacted Forman over the last few months on several occasions in an effort to address and resolve concerns regarding his employment at AHOM in light of his restrictive covenants with Apria and to exercise its rights under the MUSAs.

31. On August 26, 2014, Holdings sent a letter to Foreman as notice that it was exercising its rights to repurchase Foreman's Units (the "Call Notice"). Foreman told Holdings that he was simply helping to manage AHOM's technology department and that his positon with AHOM would not jeopardize Apria's business information. Based on that information, Apria proceeded to repurchase Foreman's Units for the same amount he paid for them ($0.00) as provided under the terms of the MUSAs due to the fact that he had violated the express terms of the MUSAs by working for a direct competitor. However, based on the representations made by Foreman, Apria did not immediately seek injunctive relief. Instead, Apria requested that Foreman make the following representation to Apria confirming what he had represented in his discussions with Apria:

> *Foreman hereby represents and warrants that his current position with AHOM does not involve any duties, obligations or actions (such as marketing, sales or business operations) that are directly competitive against Apria and that Foreman shall not accept any position (with AHOM or otherwise) that is directly competitive against Apria until on or after May 10, 2015.*

32. However, on February 20, 2015, after extensive delay on Foreman's part, Foreman expressly declined to make the requested representation.

33. At approximately the same time, Apria became aware that Foreman is in fact working for AHOM as its Senior Vice President of Strategic Initiatives, with responsibilities essentially the same as those he had in his career at Apria.

34. Further, it appears that Foreman has used Apria's confidential and trade secret information for AHOM's benefit, including the aforementioned Confidential Information, methods and initiatives Apria developed to meet its industry's competitive challenges.

35. Indeed, upon information and belief, Foreman is believed to have shared precisely that information with AHOM, which has adopted what amounts to a significant portion of Apria's business plan as the "Strategic Initiatives" Foreman is charged with implementing.

36. Apria, through its Affiliate, has also sought repayment of proceeds as detailed in the MUSAs ("Request for Repayment of Proceeds").

37. To date, Foreman has not complied with the request for repayment.

38. On February 23, 2015, Apria made demand on AHOM that it cease and desist from employing Foreman in a manner that constitutes a breach of his non-compete obligations and from utilizing Apria's confidential and proprietary information.

39. On March 2, 2015, Apria received an email from AHOM's President and CEO, Mark Lamp, denying that AHOM had received from Foreman or used any confidential materials of Apria. The email further stated that Foreman is not soliciting any Apria customers nor employees.

## FIRST COUNT
## BREACH OF CONTRACT

40. Apria incorporates the foregoing allegations as if fully re-stated herein.

41. The MUSAs impose enforceable obligations on Foreman.

42. The MUSAs detail Apria's rights with respect to the Units issued to Foreman, including the rights to repurchase the Units and to seek repayment of the proceeds.

43. The restraints imposed by the MUSAs are reasonably tailored to protect Apria's legitimate interests.

44. The restraints imposed by the MUSAs are consistent with public policy.

45. Foreman breached the MUSAs by accepting employment with AHOM and becoming involved with AHOM immediately upon the end of his Apria employment.

46. Foreman further breached the MUSAs by maintaining, using and disclosing Apria's confidential and trade secret information.

47. Holdings properly provided Foreman with the Call Notice regarding its intent to repurchase the Units.

48. Holdings provided Foreman with its Request for Repayment of Proceeds.

49. All conditions precedent necessary for the enforcement of the MUSAs have been satisfied.

50. Foreman refuses to comply with the Request for Repayment of Proceeds and refuses to cease and desist from using Apria's trade secrets and from competing with Apria in violation of the MUSAs.

51. As a result of Foreman's contesting of the Call Notice and failing to make the necessary repayments as required by the MUSAs, Apria and Holdings have been damaged, and continues to be damaged, by the amounts owed and interest accruing.

52. Apria has suffered irreparable damage by virtue of Foreman's breach of the MUSAs, including his work for AHOM, and his use and disclosure of Apria's Confidential Information and trade secret information.

53. As a direct and proximate result of Foreman's actions, Apria has suffered and will continue to suffer both monetary and irreparable damages.

54. Apria will suffer substantial, immediate and irreparable harm and damages unless Foreman and those acting in concert with him are enjoined from further breaching the MUSAs

and required to comply with Apria's repurchase rights and his repayment obligations set forth therein.

## SECOND COUNT
## MISAPPROPRIATION OF TRADE SECRETS

55. Apria incorporates the foregoing allegations as if fully re-stated herein.

56. While employed by Apria, Foreman occupied a position of trust and confidence and because of his position, was privy to trade secrets relating to Apria's and Apria's business and operations.

57. Foreman is prohibited under the MUSAs, and under applicable law, from disclosing or divulging Apria's trade secret information without its authorization.

58. This information has significant value to Apria, and is not known to Apria's competitors by legitimate means. A large portion of the value of the information results from the fact that it is unknown to Apria's competitors. This information was developed by Apria, over considerable time and at substantial expense.

59. Apria took reasonable precautions to protect its trade secret information and Foreman knew that said information was confidential.

60. Upon information and belief, Foreman has used and disclosed, and plans to continue to use and disclose, Apria's trade secrets for his benefit. Such actions violate Apria's policies, Foreman's Agreement with Apria, and applicable law.

61. As a result of Foreman's misappropriation of Apria's trade secret information, Apria has been and will continue to be severely and irreparably damaged.

62. Unless Foreman's further use and disclosure of Apria's trade secrets is enjoined, Apria will continue to suffer irreparable harm.

63. Foreman's misappropriation of Apria's trade secrets was willful and malicious.

64. Apria will suffer substantial, immediate and irreparable harm and damages unless Foreman and those acting in concert with him are enjoined from disclosing and using such trade secrets, proprietary and confidential business information.

65. Further, because of the information Foreman possesses, it is not reasonably possible for him to be employed by AHOM in his current capacity without a substantial risk that he will continue, even inadvertently, to use and/or disclose Apria's trade secrets in that work. Consequently, unless Foreman is also enjoined from working for AHOM as a result of that inevitable disclosure of Apria's trade secrets, Apria will continue to suffer irreparable harm.

## **CLAIM FOR RELIEF**

WHEREFORE, Plaintiff Apria Healthcare LLC respectfully requests that the Court enter an order in favor of Apria and against Defendant Stephen L. Foreman on these claims and grant the relief requested below as well as any other relief as the Court deems appropriate.

BASED UPON ALL OF THE ABOVE, Plaintiff demands the following relief:

1. Judgment in favor of Apria on all claims asserted;

2. An order directing Foreman to make payment to Apria consistent with the "Repayment of Proceeds" sections of the MUSAs, in an amount equal to $169,774, subject to any applicable adjustments described in Section 5.3 of the MUSAs;

3. An order confirming Apria's right to repurchase, pursuant to the MUSAs, all of the Vested and Unvested Units held by Foreman, as defined in the MUSAs;

4. Preliminary and permanent injunctions enjoining Foreman:

    a. From breaching the MUSAs;

    b. From maintaining, using or disclosing Apria's confidential and trade secret information;

    c. From continuing his employment relationship with American HomePatient, Inc.;

5. An award of costs, interest and attorneys' fees;

6. An award of compensatory damages;

7. An award of punitive damages;

8. An accounting and payment in the amount of any compensation, commission, bonus, salary, profit, gratuity, emolument, or other gain received, directly or indirectly, by Foreman in any transaction connected

with Foreman's breach of the MUSAs or Foreman's exploitation of Apria's trade secrets and confidential information; and

9. Such other relief in law or in equity to which Apria may be entitled.

Dated: New York, New York
March 5, 2015

PLAINTIFF,
APRIA HEALTHCARE LLC

By: _____
CONRAD S. KEE (CK9399)
JACKSON LEWIS P.C.
1010 Washington Boulevard, 7th Floor
Stamford, Connecticut 06902
Tel: (203) 961-0404
Fax: (203) 324-4704
Email: keec@jacksonlewis.com

KRISTIN L. WITHERELL (KP3781)
JACKSON LEWIS P.C.
666 Third Avenue, Floor 29
New York, New York 10017
Tel: (212) 545-4000
Fax: (212) 972-3213
Email: witherek@jacksonlewis.com

Its Attorneys

## VERIFICATION

Pursuant to 29 U.S.C. § 1746, I, Daniel J. Starck, the Chief Executive Officer of Apria Healthcare LLC, hereby declare under penalty of perjury under the laws of the United States of America that I have read the foregoing Verified Complaint, that I personally know or have been informed of, and believe, the facts stated in the foregoing Verified Complaint, and that said facts are all true and correct to the best of my knowledge, information and belief.

This 4th day of March, 2015.

_____
Daniel J. Starck